IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Criminal Action No. |
| ) | 08-00238-01-CR-W-NKL |
| ANTONIO BARRAGEN, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**
**TO ACCEPT DEFENDANT'S GUILTY PLEA**

On August 5, 2009, I held a change-of-plea hearing after this case was referred to me by United States District Judge Nanette Laughrey. I find that defendant's plea was voluntary and therefore recommend that it be accepted.

*I. BACKGROUND*

On September 3, 2008, an indictment was returned charging defendant with one count of escaping from a federal residential re-entry center, in violation of 18 U.S.C. § 751. Judge Laughrey referred this case to me for conducting a change-of-plea hearing and issuing a report and recommendation on whether to accept the plea. The hearing was held on August 5, 2009. Defendant was present, represented by Assistant Federal Public Defender Laine Cardarella. The government was represented by Assistant United States Attorney Paul Becker. The proceedings were recorded and a transcript of the hearing was filed on August 7, 2009.

## II. AUTHORITY OF THE COURT

Although the issue has not been widely litigated, the several courts faced with the question of whether a United States Magistrate Judge has authority to conduct a change-of-plea hearing have held that there is such authority. Determining whether a judicial duty is properly delegable to a Magistrate Judge requires a two-part analysis: First, it must be determined whether Congress intended for Magistrate Judges to perform the duty in question, and second, it must be determined whether the delegation of the duty to a Magistrate Judge "offends the principles of Article III of the Constitution." United States v. Dees, 125 F.3d 261, 264 (5th Cir. 1997), cert. denied, 522 U.S. 1152 (1998).

Although the Magistrates Act, 28 U.S.C. § 636, does not specifically mention change-of-plea hearings, it provides that "[a] magistrate may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States." 28 U.S.C. § 636(b)(3). Courts have used this language to conclude that plea allocutions do not differ markedly from other duties performed by Magistrate Judges and therefore are assignable to them under the Act. See United States v. Dees, 125 F.3d at 265; United States v. Ciapponi, 77 F.3d 1247, 1251 (10th Cir.), cert. denied, 517 U.S. 1215 (1996); United States v.

2

Williams, 23 F.3d 629, 633 (2nd Cir.), cert. denied, 513 U.S. 1045 (1994); United States v. Rojas, 898 F.2d 40, 42 (5th Cir. 1990).

The courts making the above determination also found that referring cases to Magistrate Judges for change-of-plea hearings was not in conflict with Article III of the Constitution. "Because the district court retained full authority to review and reject the magistrate judge's recommendation, the delegation did not exceed the scope of magisterial authority contemplated by the Act. . . . A district court has the power to review de novo a magistrate's taking of a guilty plea, and it can reject the plea if it finds a problem in the allocution." United States v. Dees, 125 F.3d at 265. In addition, the district court has "unfettered authority to review a magistrate judge's recommendation regarding the voluntariness of a plea." Id.

Based on the above, I find that the District Court may properly refer a felony case to a Magistrate Judge for conducting a change-of-plea hearing and issuing a report and recommendation on whether the plea should be accepted.

### III. FINDINGS OF FACT

1. On September 3, 2008, an indictment was returned charging defendant with one count of escaping from a federal residential re-entry center, in violation of 18 U.S.C. § 751 (Tr.

3

at 4). Defendant understood the charge in the indictment (Tr. at 4).

2. The statutory penalty for the charged violation is not more than five years in prison, a fine of up to $250,000, a supervised release term of not more than five years, and a mandatory $100 special assessment (Tr. at 4). Defendant understood the statutory penalty (Tr. at 4).

3. Defendant was advised of the following:

   a. That he has a right to a trial by jury of at least 12 individuals and that their verdict must be unanimous (Tr. at 5);

   b. That he has the right to assistance of counsel throughout the trial (Tr. at 5);

   c. That defendant is presumed innocent, and the government has the burden of coming forward to prove defendant's guilt beyond a reasonable doubt (Tr. at 5-6);

   d. That defendant's attorney would have the opportunity to cross examine the government witnesses (Tr. at 6);

   e. That defendant has the right to testify but does not have to, and that the jury could not make an adverse inference from the fact that defendant may not testify at trial (Tr. at 6-7);

4

f. That defendant has the right to subpoena witnesses to testify on his behalf (Tr. at 7); and

g. That defendant has the right to appeal any conviction to the Eighth Circuit Court of Appeals (Tr. at 7-8).

4. Defendant was informed and understood that by pleading guilty, he is giving up all of the rights described above (Tr. at 8).

5. Defendant was informed that during the change-of-plea proceeding, he would be placed under oath and questioned by counsel and the judge (Tr. at 8). Defendant was further informed that he must answer questions truthfully while under oath (Tr. at 8-9). Defendant stated that he understood (Tr. at 8-9).

6. Government counsel stated that this was an open-file case, and defense counsel stated that she reviewed the government's file (Tr. at 9). Government counsel stated that its evidence would show that on July 21st of 2004, defendant was sentenced in federal court to 57 months incarceration. At the end of that placement with the Bureau of Prisons, he was placed at the Kansas City Community Center, a federal residential reentry center located at 1514 Campbell Street, Kansas City, Jackson County, Missouri. On July 24, 2008, the Marshal's Service was informed by the manager of that facility that Mr. Barragan had failed to return as scheduled at 12:30 a.m. of that date. He had

5

signed out to go to work at a restaurant and then not returned. The evidence would be that Mr. Barragan phoned the halfway house twice to speak with a woman there and asked if he'd be sent back to prison if he returned late and they informed him he had to come back. And then as of July 24th, 2008, he had not been seen or heard from by anyone at the Bureau of Prisons. The elements of that offense would be one, that he was in the custody of the Attorney General, two, the custody was by virtue of a felony conviction, three, the defendant left custody without authorization, and four, in doing so the defendant knew he was leaving custody without authorization (Tr. at 9-10).

7. Defense counsel agreed that her review of the evidence and her independent investigation confirmed that the facts were as alleged by the government and that it is in the defendant's best interest to plead guilty (Tr. at 9, 10).

8. Defendant was placed under oath (Tr. at 10) and admitted the following: Sometime around July 24, 2008, he was in the custody of the Kansas City Community Center, a facility that has a contract with the federal government for a re-entry program; he left the facility and did not return; when he left the facility and failed to return he knew it was a violation of the law and he intended not to return (Tr. at 11-12).

9. Defendant is aware that there is no written plea agreement in this case (Tr. at 3).

6

10. No one has made any threats or promises in order to get defendant to plead guilty (Tr. at 12).

11. Defendant is satisfied with the advice and guidance he has received from Ms. Cardarella (Tr. at 12). There is nothing Ms. Cardarella has done that defendant did not want her to do, and there is nothing he wanted Ms. Cardarella to do that she has not done (Tr. at 12-13).

12. Defendant is 29 years of age and has a GED (Tr. at 13). He was not under the influence of any alcohol or drug that would affect his ability to make an intelligent choice about pleading guilty during the change-of-plea hearing (Tr. at 13).

13. Defendant tendered a plea of guilty to the crime charged in this indictment (Tr. at 14).

## IV. ELEMENTS OF THE CHARGED OFFENSE

The elements necessary to sustain a conviction for escape are:

One, the defendant was in the custody of the Attorney General;

Two, the custody was by virtue of a felony conviction;

Three, the defendant left custody without authorization; and

Four, in so doing, the defendant knew that he was leaving custody without authorization.

See Eight Circuit Model Criminal Jury Instruction 6.18.751.

7

## V.  CONCLUSION

Based on the above, I make the following conclusions:

1.  The district court may lawfully refer this case to a Magistrate Judge for issuance of a report and recommendation on whether defendant's guilty plea should be accepted.

2.  Defendant knowingly and voluntarily pleaded guilty to conduct establishing every element of the crime charged in this indictment.

Therefore, it is

RECOMMENDED that the court, after making an independent review of the record and the applicable law, enter an order accepting defendant's guilty plea and adjudging defendant guilty of the offense charged.

Counsel are advised that, pursuant to 28 U.S.C. § 636(b)(1), each has ten days from the date of this report and recommendation to file and serve specific objections.

*/s/ Robert E. Larsen*
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
August 7, 2009